UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| ROBERT DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7: 22-43-WOB |
| | ) | |
| v. | ) | |
| | ) | |
| E. ALTHAUSER and JOHN DOES, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants Eric Althauser and Rodney Ward have filed a motion to dismiss the Second Amended Complaint filed by Plaintiff Robert Davis, or in the alternative to grant summary judgment upon the claims asserted against them. [R. 24] Davis has responded to the motion, to which the Defendants have replied. [R. No. 34, 35] The motion is ripe for decision.

In his complaint Davis alleges that on August 13, 2020, the Defendants and several other prison guards attacked him in his cell without provocation. Specifically, the officers allegedly kicked and punched him repeatedly while yelling racial slurs at him. The attack injured both of his eyes and his left shoulder. Invoking the doctrine announced in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), Davis sues the Defendants for asserted violation of his right to due process under the Fifth Amendment, his right to be free from cruel and unusual punishment under the Eighth Amendment, and his right to equal protection under the law under the Fourteenth Amendment. [R. 19 at 2-4][1]

---

[1] In his original complaint Davis complained that he never received medical care for his injuries. [R. 1 at 9] But he did not name medical staff as defendants or assert any claim for inadequate medical care. *See* [R. 1 at 1, 9] Further, Davis' Second Amended Complaint makes no allegations and asserts no claims regarding his medical care. *See* [R. 19 at 2-4]

The Defendants move to dismiss Davis' complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. They primarily contend that the Court should not infer a remedy under *Bivens* for the Plaintiff's claims in light of the Supreme Court's decisions in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) and *Egbert v. Boule*, 142 S. Ct. 1793 (2022). *See* [R. 24-1 at 4-22][2] Davis' response largely repeats his factual allegations and argues that the Defendants violated his constitutional rights. [R. 34][3]

The Defendants argue that Davis' claims are not cognizable under *Bivens* because they present new contexts from those where the Supreme Court has previously permitted an implied remedy, and special factors counsel against expanding the *Bivens* remedy to encompass Davis' claims. [R. 24-1 at 4-22] After *Bivens* was decided in 1971, the lower federal courts extended its rationale to provide an implied remedy against federal actors for a wide variety of claims. But the Supreme Court has implied a damages remedy in only three circumstances:

(1) where federal officials search a private residence without probable cause in violation of the Fourth Amendment, *see Bivens*, 403 U.S. at 397;

(2) where a Congressperson terminated an employee on the basis of gender in violation of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228, 249 (1979); and

(3) where prison officials displayed deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 24 (1980).

---

[2] The Defendants also briefly argue that they are entitled to qualified immunity. *See* [R. 24-1 at 22-25] But this argument is not adequately developed, and because the Defendants' contentions under *Egbert* are sufficient to resolve their motion, the Court declines to address it.

[3] The title of Davis' response suggests that he both responds to the Defendants' dispositive motion and seeks summary judgment in his favor. [R. 34 at 1] But the body of his response merely asks the Court to deny the Defendants' motion and set the case for trial; Davis does not argue that he is entitled to judgment in his favor as a matter of law. *See id*. at 1, 2. The Court therefore treats his response solely as opposing the Defendants' motion.

Since that nine-year span concluded more than forty years ago, the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001).  Indeed, it has expressly rejected requests to extend *Bivens* on eleven different occasions.  *Egbert v. Boule*, 142 S. Ct. 1793, 1799 (2022).

The Supreme Court has thus made clear that *Bivens* is a remedy available only in "limited settings," *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009), and that expanding that remedy is disfavored, *Ziglar v. Abbasi*, 127 S. Ct. 1843, 1857 (2017).  Federal courts have viewed *Ziglar* as clearly "narrow[ing] the circumstances in which a plaintiff may successfully state a claim under principles established in *Bivens*."  *See Atkinson v. Holder*, 925 F.3d 606, 620 (4th Cir. 2019); *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020) ("What started out as a presumption in favor of implied rights of action has become a firm presumption against them.").

In *Ziglar*, the Supreme Court indicated that courts must employ a two-step test to determine if *Bivens* provides a remedy for alleged misconduct by federal officials.  First, a court must decide if the plaintiff's claim presents a "new context" for application of *Bivens* because it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]."  *Ziglar*, 137 S. Ct. at 1859.  A difference is "meaningful" if, for example, it involves a different constitutional right, a different category of officers as defendants, a difference in the specificity of agency actions at issue, a difference in institutional expertise, or differing risks of judicial intrusion.  *Id*. at 1860.  If the proposed *Bivens* claim would involve a new context, the Court must next decide whether any special factors counsel hesitation before extending the *Bivens* remedy to the new context.  *Jacobs v. Alam*, 915 F.3d 1028, 1037 (6th Cir. 2019).  In *Ziglar*, the Court explained that the central question is "who should decide whether to provide for a damages remedy, Congress or the courts?

3

The answer most often will be Congress." *Ziglar*, 137 S. Ct. at 1857 (cleaned up). In *Egbert* the Supreme Court emphasized that in the special factors analysis, Congress' role in crafting remedies for violation of federal rights is nearly exclusive:

> "Unsurprisingly, Congress is far more competent than the Judiciary to weigh such policy considerations. And the Judiciary's authority to do so at all is, at best, uncertain. ... If there is a rational reason to think that the answer is "Congress" - as it will be in most every case - no *Bivens* action may lie. While our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy.

*Egbert*, 142 S. Ct. at 1803 (cleaned up).

It is plain that Davis' claims present contexts entirely new and different from those previously recognized by the Supreme Court as cognizable under *Bivens*. In this regard, the claim under review must bear a striking resemblance to a *Bivens* claim previously recognized by the Supreme Court because even a "modest extension" of a prior Supreme Court case constitutes a new context. *Ziglar*, 137 at 1864. Davis' equal protection claim under the Fourteenth Amendment, presumably based upon the Defendants' alleged utterance of racial slurs,[4] clearly presents a new context: the Supreme Court has not previously implied a claim under *Bivens* to remedy race-based discrimination under the Fourteenth Amendment. *Cf. Tate v. Harmon*, No. 7:19-CV-00609, 2020 WL 7212578, at *5 (W.D. Va. Dec. 7, 2020), *affirmed*, 54 F.4th 839 (4th

---

[4] Independent of whether *Bivens* provides a remedy, racially based verbal abuse does not state a claim of constitutional dimension. *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding "harassment and verbal abuse ... do not constitute the type of infliction of pain that the Eighth Amendment prohibits"); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (*per curiam*); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("[t]he use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution.").

Cir. 2022). The is also true of his (presumably, substantive) due process claim under the Fifth Amendment.[5] These claims present new contexts.

The same result obtains for Davis' excessive force claim under the Eighth Amendment. While the Supreme Court recognized a *Bivens* claim for the denial of adequate prison medical care under the Eighth Amendment in *Carlson*, it has never permitted an excessive force claim under *Bivens*. *Silva v. United States*, 45 F. 4th 1134, 1137 (10th Cir. 2022) ("The distinction between an excessive force claim like the one Plaintiff brings and a deliberate indifference to medical needs claim - which the Supreme Court recognized as a valid *Bivens* action in *Carlson* - is sufficient to conclude that Plaintiff's claim would require an expansion of *Bivens* to move forward even though it originates under the Eighth Amendment."); *Morel v. Dep't of Just.*, No. 7:22-CV-15-DCR, 2022 WL 4125070, at *5 (E.D. Ky. Sept. 9, 2022) ("Morel's Eighth Amendment claim based on allegations that officers used excessive force against him presents a context that is entirely new and different from those previously recognized by the Supreme Court as cognizable under *Bivens*."); *Baldwin v. Hutson*, No. 6:19-CV-151-REW-HAI, 2022 WL 4715551, at *2 (E.D. Ky. Sept. 30, 2022) ("As an Eighth Amendment excessive force claim differs, radically perhaps, from a medical indifference claim, such a claim would be a new *Bivens* context. Numerous courts have

---

[5] Davis makes no effort to identify what conduct allegedly violated his substantive due process rights. And the conduct he does allege – excessive force and raced-based verbal abuse – suggest claims more properly falling within the scope of the protections found in the Eighth and Fourteenth Amendments, not the Fifth. *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."). It is therefore not clear that Davis could state a viable independent substantive due process claim under the Fifth Amendment. *Cf. Geddes v. Weber Cnty.*, No. 20-4083, 2022 WL 3371010, at *3-5 (10th Cir. Aug. 16, 2022) (noting that a plaintiff's claim that government officials used excessive force is governed by different constitutional amendments depending upon "where the plaintiff finds himself in the criminal justice system at the time of the challenged use of force," and that the Eighth Amendment applies to events arising after the plaintiff has been convicted).

reached the same conclusion.") (collecting cases); *Johnson v. Gann*, No. 1:19-CV-5, 2022 WL 772953, at *4 (E.D. Tex. Feb. 15, 2022) ("Plaintiff's claims of excessive force, verbal abuse, failure to protect, and a falsified disciplinary case are new contexts because the Supreme Court has not previously recognized an implied cause of action for these claims."), *report and recommendation adopted*, 2022 WL 759526 (E.D. Tex. Mar. 11, 2022).

Because Davis' claims arise in new contexts, the Court must next ask whether special factors counsel against the courts implying a damages remedy when Congress has not done so. *Egbert*, 142 S. Ct. at 1803. Many such factors are present here. First and foremost, Congress chose not to create a statutory cause of action against federal officials for violations of constitutional rights, either when it did so for state actors in its initial enactment of 42 U.S.C. § 1983, or in the extensive revisions to the civil rights laws in the Prison Litigation Reform Act of 1995. The Supreme Court has noted the particular relevance of the latter omission. *See Ziglar*, 137 S. Ct. at 1865 (noting that "the [PLRA] itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment."). After all, such "prison-based claims present a risk of interference with prison administration." *Callahan*, 965 F.3d at 524.

Second, federal prisoners have other means to vindicate their constitutional rights. The Bureau of Prisons' inmate grievance program provides a viable alternative mechanism to challenge staff misconduct. *See Malesko*, 534 U.S. at 61 (noting that the BOP's inmate grievance program "provides yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring."). This remedy is not considered less meaningful merely because it is created by regulation rather than by statute, *Callahan*, 965

6

F.3d at 524 ("Alternative processes, for *Bivens* purposes, do not have to be creations of Congress."), or less effective merely because it does not provide the deterrence afforded by damages, *Egbert*, 142 S. Ct. at 1807 ("So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy."). *See also Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Courts have thus consistently held that the BOP's inmate grievance program provides a viable alternative remedy counseling against inferring a remedy under *Bivens*. *Callahan*, 965 F.3d at 524; *Freedland v. Mattingly*, No. 1:20-CV-81, 2021 WL 1017253, at *8 (M.D. Pa. Mar. 17, 2021) (collecting cases).

Federal inmates may pursue several other avenues to challenge or remedy wrongdoing. They may request an investigation through the BOP's Internal Affairs Office or the Department of Justice's Office of the Inspector General, which may serve to deter misconduct.[6] *See Hower v. Damron*, No. 0:20-CV-53-WOB, 2021 WL 4449980, at *6 (E.D. Ky. Sept. 28, 2021), *aff'd*, No. 21-5996, 2022 WL 16578864 (6th Cir. Aug. 31, 2022). Federal prisoners may seek injunctive relief to halt constitutional violations, again counseling against the creation of implied remedy for damages. *See, e.g., K.B. v. Perez*, 664 F. App'x 756, 759 (10th Cir. 2016) (recognizing that suits for injunctive relief constitute alternative means for preventing unconstitutional conduct in the prison context); *Tillman v. Huffman*, No. 1:20-CV-63, 2020 WL 9348241, at *7 (S.D.W. Va. May

---

[6] *See* 28 C.F.R. § 45.11; BOP Program Statement 3420.11, § 4, Att. A (Dec. 6, 2013) ("Employees must ... report to their CEO (or other appropriate authority such as the Office of Internal Affairs or the Office of the Inspector General) any violation, appearance of a violation, or attempted violation of these Standards or of any law, rule, or regulation."); BOP Program Statement 1330.18,§13(b) (Jan. 6, 2014) ("Allegations of physical abuse by staff shall be referred to the Office of Internal Affairs (OIA) in accordance with procedures established for such referrals."); BOP Program Statement 1210.24, § 8 (May 20, 2003) (establishing procedures to report staff misconduct to the Office of Inspector General).

7

28, 2020) (collecting cases), *report and recommendation adopted*, No. CV 1:20-00063, 2021 WL 1153995 (S.D.W. Va. Mar. 26, 2021); *Millbrook v. Spitz*, No. 18-CV-01962-RM-KMT, 2019 WL 5790701, at *10 (D. Colo. Aug. 26, 2019), *report and recommendation adopted*, No. 1:18-CV-01962-RM-KMT, 2019 WL 4594275 (D. Colo. Sept. 23, 2019).

And the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*., permits a damages action against the United States for certain negligent or intentional acts committed by its employees during the course of their employment. See 28 U.S.C. § 1346(b)(1). "If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Egbert*, 142 S. Ct. at 1804 (cleaned up); *see also Malesko*, 534 U.S. at 69 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability."). The Court therefore concludes that ample factors counsel strongly against implying a remedy under *Bivens* for Davis' claims, and declines to do so here.

Finally, Davis has filed a cross-motion for summary judgment, arguing that the Defendants acted improperly by seeking summary judgment before responding to his discovery requests and requesting denial of their motion on that ground. [R. 37] The Court will deny this motion for several reasons. To the extent that Davis' motion could be construed as an attempt to compel discovery, he has not included the certification required by Rule 37(a) of the Federal Rules of Civil Procedure. In addition, if Davis sought to defer consideration of the Defendants' dispositive motion pending discovery pursuant to Rule 56(d), it was not timely filed: Davis should have filed any such motion within the time provided to file his response in opposition to their motion. *See* [R. 33] In any event, the discovery sought by Davis is not responsive to the Defendants' arguments under *Ziglar*, which seek dismissal on purely legal grounds under Rule 12(b)(6). *Cf. Ojo v. United*

8

*States*, 364 F. Supp. 3d 163, 167 n.3 (E.D.N.Y. 2019); *Dinkins v. United States*, No. 2:21CV08942-CAS (KES), 2022 WL 15525746, at *1 (C.D. Cal. Oct. 27, 2022). Rule 56(d) therefore does not apply. *Cf. Swoger v. Rare Coin Wholesalers*, 803 F. 3d 1045, 1048 (9th Cir. 2015) (plaintiff did not satisfy Rule 56(d) request for further discovery where summary judgment determination "turned on a pure question of law"); *Teck Metals, Ltd. v. Certain Underwriters at Lloyd's, London*, 735 F. Supp. 2d 1246, 1256 (E.D. Wash. 2010) (continuance for discovery is not necessary to respond to purely legal arguments where the controlling facts are not in dispute). After all, "the very purpose of Rule 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) (cleaned up).

In light of the foregoing, the Court will grant the Defendants' motion to dismiss Davis' complaint for failure to state a claim.

Accordingly, the Court **ORDERS** as follows:

1. The Court **GRANTS** the Defendants' Motion to Dismiss [R. 24].

2. The Court **DENIES** Davis' Motion for Summary Judgment [R. 37]

3. The Court **DISMISSES** Davis' Second Amended Complaint [R. 19] with prejudice.

4. The Court will enter an appropriate judgment.

5. This matter is **STRICKEN** from the docket.

This 6th day of February, 2023.



Signed By:
*William O. Bertelsman*   WOB
United States District Judge